FILED - USDC - FLMD - ORL
APR 6 2026 PM3:33

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**

AL HAMMAN, individually,

WILL HAMMAN, individually,

AVA HAMMAN, individually,

Plaintiffs,

v. Case No. 25-cv-2102-LHP

UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES;

YOUNDY COOK, in her individual and official capacities;

ALEXANDER CARTWRIGHT, in his individual and official capacities;

MICHAEL JOHNSON, in his individual and official capacities,

Defendants.

AMENDED COMPLAINT

(42 U.S.C. § 1983 – Constitutional Violations)

## I. INTRODUCTION

1. This action arises under 42 U.S.C. § 1983 for deprivation of rights secured by the Fourteenth Amendment.

2. *Florida Statutes* § 1001.706(2) requires state universities to adopt Regulation Development Procedures ("RDPs") providing procedural protections analogous to those afforded under Chapter 120.

3. Section 1001.706(2)(c), Florida Statutes, mandates that the regulation development procedure "must provide for ... a process for a substantially affected person to challenge a statement of general applicability that has not been properly adopted as a regulation," a process to challenge unlawful regulations, judicial review, and specifies that "[t]he regulation development procedure shall be published prominently on the websites of the Board of Governors and the state universities." The RDP is the statutory vehicle implementing that mandate, and the procedural protections contained therein are not discretionary internal guidelines but legislatively required safeguards.

4. In Response, the Florida Board of Governors adopted a Regulation Development Procedure governing State University Boards of Trustees.

5. The RDP establishes mandatory procedures for:

a. Adoption, amendment, or repeal of regulations;

b. Approval of Select Regulations by the Board of Governors;

c. Adjudicative challenges to promulgated and unpromulgated regulations;

d. Appellate review of certiorari in the District Courts of Appeal

6. Defendants implemented and enforced an evolving set of "policies" related to Dual Enrollment which prohibited Plaintiffs Will and Al Hamman from benefiting from statutory entitlements through the Dual Enrollment program.

7. Those "policies" actually constituted regulations which were never promulgated pursuant to the RDP.

8. Plaintiff repeatedly invoked the RDP's Regulation Challenge provisions.

9. Defendants repeatedly refused to provide the adjudicative process mandated by Section H.

10. Instead, Defendants unilaterally removed the GPA requirement without convening a hearing officer and without complying with repeal procedures required under the RDP.

11. Defendants' actions deprived Plaintiff and his son of procedural due process. Those procedural protections were duly legislated under FS 1001.706(2) which were implemented to protect property interests in participation in the Dual Enrollment Program and in free instructional materials, and further deprived Plaintiff of meaningful access to courts by refusing to recognize and process filings that satisfied the requirements of a Regulation Challenge under Section H of the RDP, thereby foreclosing exhaustion and meaningful judicial review.

12. Plaintiff further alleges that Defendants did not merely refuse the adjudicative process required by Section H while the matter remained in state channels, but also acted to control the forum in which Plaintiff's claims could be heard.

13. Defendants removed this action to federal court in order to subject Plaintiff to a Martin-Trigona prefiling-sanctions regime that

would have materially burdened and obstructed Plaintiff's ability to obtain merits review of the claims asserted here.

14. Plaintiff further alleges that Defendants' effort to route this action back into the practical orbit of the prior sanctions order failed only because the case was initially assigned to a different judge and that judge elected to retain the action rather than transfer it.

15. These allegations are relevant not because removal itself was improper, but because they further support the inference that Defendants were engaged in deliberate forum control and strategic manipulation of adjudicative access rather than a good-faith effort to secure neutral and orderly review of Plaintiff's claims.

16. The conduct alleged herein was not a negligent failure to process paperwork or an isolated administrative error.

17. Plaintiff alleges that Defendants acted with actual notice of the governing statutory and regulatory framework, with petitions which meet the RDP triggering criteria laid out in sec H, and with actual notice of the foreseeable human consequences of refusing that process.

18. Plaintiff will show that the continuing enforcement of the unpromulgated admissions restrictions, the deliberate non-initiation of

mandatory adjudicative proceedings, the unilateral extinguishment of a pending challenge, and the suppression, nonproduction, & alteration of material records constituted arbitrary executive action unjustifiable by any legitimate governmental interest and shocking to the conscience.

## II. JURISDICTION AND VENUE

19. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.

20. Declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201–2202.

21. Venue is proper in this District.

22. Plaintiff further invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) over related state-law claims arising under Florida's Sunshine Law and Florida Public Records Act.

23. Those state-law claims arise from the same case or controversy as the federal claims pleaded herein because they concern the same Board of Trustees meetings, the same public notices, the same website-posted records, the same alleged alteration of an official public record during the pendency of this litigation, and the same alleged impairment of meaningful judicial review.

24. Plaintiff does not plead those state-law claims as free-standing side controversies, but as parallel state-law enforcement claims arising from the same nucleus of operative fact.

25. Plaintiff further alleges that these state-law claims are pleaded here because Defendant removed the case to federal court and thereby placed before this Court the same meetings, notices, public records, and website-published materials that underlie both the federal and state theories of relief.

## III. PARTIES

26. Plaintiff Al Hamman is a Florida resident. Plaintiff Will Hamman is a Florida resident, is 23 years old, and met statutory eligibility criteria for Dual Enrollment. Plaintiff Ava Hamman is a Florida resident and is the wife & mother of the above.

27. Defendant University of Central Florida Board of Trustees is the public body corporate responsible for the governance of the University of Central Florida within the State University System of Florida.

28. Defendant Youndy Cook, at all relevant times, served as General Counsel &/or UCF's Vice President of Legal Affairs and was responsible for oversight of administrative remedies under the RDP.

29. Defendant Alexander Cartwright served as President of UCF and exercised supervisory and decision-making authority regarding regulatory and adjudicative matters herein.

30. Defendant Michael Johnson served as Provost of UCF and participated in decision-making regarding Plaintiff's Petition.

31. Cook, Cartwright, and Johnson are sued in both their official and individual capacities.

## IV. FACTUAL ALLEGATIONS

### A. Statutory / Regulatory Framework Governing Dual Enrollment

32. *Florida Statutes* § 1001.706(2) requires state universities to adopt a Regulation Development Procedure ("RDP") providing procedural protections analogous to those afforded under Chapter 120.

33. Section 1001.706(2)(c) mandates that the RDP must provide a process by which A) regulations are lawfully promulgated within the state university system, & B) a substantially affected person

may challenge a statement of general applicability that has not been properly adopted as a regulation and may challenge unlawful regulations.

34. Pursuant to that statutory mandate and it's own 2010 Governance Agreement, the Florida Board of Governors adopted a Regulation Development Procedure governing State University Boards of Trustees.

35. The RDP defines "Regulations" as statements of general applicability guiding the conduct or action of constituents or the public.

36. Section B of the RDP designates certain categories of regulations as "Select Regulations," including regulations pertaining to admissions, articulation, tuition, and fees. Select Regulations require approval by the Board of Governors before becoming effective.

37. Section H of the RDP establishes mandatory adjudicative procedures for challenging promulgated and unpromulgated regulations.

38. Section H.2(b) provides that, within 15 days after receipt of a qualifying petition, the university board of trustees shall assign a hearing officer who shall conduct a hearing. This language imposes a

mandatory, ministerial duty once the objective triggering criteria are satisfied.

39. Section J conditions judicial review upon exhaustion of administrative remedies under the RDP.

40. *Florida Statute* § 1007.271 establishes Florida's Dual Enrollment Program within the statutory framework & chapter of Florida Statutes governing articulation, Chapter 1007.

41. Florida law deems Dual Enrollment to be an accelerated articulation mechanism and mandates that eligible students be permitted to participate upon satisfaction of statutory criteria.

42. The statute prohibits requiring a high school GPA for home education students.

43. The statute mandates provision of free instructional materials for Dual Enrollment students.

44. The Board of Governors' own public governance materials and publicly posted RDP materials described the RDP as the operative regulatory process governing university regulations and identified

admissions and articulation matters as Select Regulations subject to Board-of-Governors review.

45. The 2010 Governance Agreement further required "adequate procedural due process protections" and "prominent publication" of those protections on Board-of-Governors and university websites.

46. University trustees and senior officials were placed on notice through governance materials, orientation materials, & publicly posted regulatory materials; that admissions and articulation regulations could not lawfully bypass Select-Regulation procedures and that the RDP's adjudicative protections were not discretionary.

47. This notice is relevant not only to Defendants' knowledge of the governing law, but also to the arbitrariness and conscience-shocking character of the conduct alleged herein.

## B. Plaintiff's Protected Interests

48. Plaintiff's son met all statutory eligibility criteria at all times.

49. Participation in Dual Enrollment upon meeting statutory criteria constitutes a legitimate claim of entitlement under state law.

50. Free instructional materials provided under the statute have measurable pecuniary value as determined by UCF's bookstore pricing.

51. As a qualifying home education student's parent, Plaintiff possessed a statutory right to enter into a Dual Enrollment Articulation Agreement pursuant to Florida law.

52. Plaintiff also possessed a liberty interest in directing the upbringing and education of his child within the bounds of the law and without unlawful state interference.

53. At all times material to the challenged Dual Enrollment denials, Plaintiff Al Hamman was the parent and home educator directly responsible for educational decision-making for his son within the home education program.

54. That parental role included the right to make lawful educational decisions and to direct the upbringing and education of his child without arbitrary governmental interference.

55. Defendants' enforcement of the unpromulgated regulations, refusal to provide the adjudicative process mandated by Section H, and suppression or nonproduction of records bearing on the legality of that requirement interfered not only with educational access, but with Plaintiff's exercise of parental authority itself.

56. The challenged conduct foreseeably undermined Plaintiff's credibility and authority within his family by making it appear that the educational deprivation and resulting harms were attributable to Plaintiff rather than to Defendants' unlawful conduct.

## C. Adoption and Enforcement of the GPA Requirement

57. UCF published a GPA requirement applicable to home education students on it's website.

58. The GPA requirement was a statement of general applicability governing participation in Dual Enrollment.

59. The GPA requirement pertained to admissions and articulation and therefore constituted a Select Regulation under Section B of the RDP.

60. The GPA requirement was never promulgated by the UCF Board of Trustees pursuant to the RDP.

61. The GPA requirement was never submitted to or approved by the Board of Governors as required for Select Regulations.

62. In January 2021, the Board of Governors initiated regulation development implementing the statutory prohibition against imposing a GPA requirement on home education students.

63. Notice of that regulation development was served upon UCF's Office of General Counsel.

64. The Board of Governors' regulation became effective in May 2021.

65. UCF continued enforcing it's GPA requirement thereafter.

66. At all times relevant to the continued enforcement of the GPA requirement, Defendants had actual or constructive notice from the text of the statute, the Board-adopted RDP, the Board of Governors' own regulatory activity in 2021, and Plaintiff's repeated filings that a home-education GPA restriction in the admissions and articulation context

could not lawfully remain in force absent proper Select-Regulation treatment.

67. At all times relevant to Plaintiff's repeated filings, Defendants likewise had actual or constructive notice that a petition satisfying Section H triggered a mandatory duty to assign a hearing officer and initiate adjudicative proceedings.

68. Despite that notice, Defendants continued to enforce the unlawful restriction, refused to initiate the required adjudicative mechanism, and thereby displaced lawful parental educational decision-making through unauthorized executive action.

## D. DENIAL OF PARTICIPATION

69. Plaintiff's son was repeatedly denied participation in Dual Enrollment by UCF admissions personnel.

70. The denial relied upon the GPA requirement published on UCF's website.

71. As a result, Plaintiff's son was deprived of participation in Dual Enrollment and of the associated free instructional materials.

## E. ACCEPTANCE OF REGULATION CHALLENGE PETITION ON JUNE 17 2021

72. On June 17, 2021, Plaintiff filed a Petition for Regulation Challenge under Section H of the RDP.

73. The Petition was personally received by President Cartwright and Provost Johnson, who acknowledged the matter as "quasi-judicial."

74. Despite receipt of the Petition, no hearing officer was assigned.

75. No adjudicative hearing was convened.

76. No recommended order or final decision was issued.

F. UNILATERAL REMOVAL OF THE GPA REQUIREMENT

77. On June 17, 2021, and subsequent to the above, the Home Education GPA requirement was removed from the UCF website.

78. The removal was directed by Defendant Cook.

79. Under the RDP, repeal or amendment of a Select Regulation required submission to the Board of Governors for approval or lapse of a defined review period.

80. The procedures required for repeal of a Select Regulation were not followed.

81. The unilateral removal did not comply with mandatory promulgation and repeal safeguards and extinguished Plaintiff's pending adjudicative challenge.

## G. Repeated Filings and Structural Refusal to Initiate Section H Proceedings

82. From 2016 through April 15, 2025, Plaintiff filed multiple pleadings in state and federal courts challenging the legality of UCF's Dual Enrollment GPA requirement.

83. Each such filing was provided to or served upon the University of Central Florida Board of Trustees.

84. Each filing satisfied the substantive criteria required laid out in Section H for a Regulation Challenge.

85. Despite receipt of qualifying filings, Defendants failed and refused to assign a hearing officer or initiate adjudicative proceedings.

86. No administrative record was created. Exhaustion of administrative remedies was rendered impossible.

87. As a result, Plaintiff encountered adverse rulings, dismissals, and procedural barriers impairing his ability to obtain meaningful judicial review.

88. Plaintiff further alleges that Defendants' course of conduct extended beyond non-initiation of the mandatory administrative process itself and included efforts to influence or constrain the judicial forum in which Plaintiff could seek review.

89. Defendants had succeeded in other matters in obtaining dismissal or other favorable outcomes through exhaustion arguments and related procedural barriers which treat the RDP as law, and Plaintiff alleges that Defendants sought to create greater leverage here through the imposition of a prefiling-sanctions regime in federal court which would have effectively foreclosed relief in this case writ large.

90. This alleged forum-control strategy is relevant to Plaintiff's access-to-courts claim because it supports the inference that Defendants were not merely passive administrators who failed to process a petition, but active participants in a broader effort to prevent authoritative adjudication of the legality of the challenged regulation and the deprivation of Plaintiff's rights.

91. The deprivations alleged herein were not a single isolated omission.

92. Each semester-specific denial of Dual Enrollment participation and the associated loss of free instructional materials constituted a separate completed injury tied to a separate admissions cycle, separate educational opportunity, and separate pecuniary loss.

93. Likewise, each separate filing that satisfied Section H.2 and was received by the University Board of Trustees or it's designee triggered a fresh ministerial duty to assign a hearing officer within fifteen (15) days.

94. Each failure to do so constituted a distinct completed deprivation of the state-created adjudicatory entitlement and, in the alternative, a separate incident or occurrence for purposes of any sovereign-immunity, aggregation, damages-cap, accrual, or preservation analysis that may become relevant in this action.

## H. Withholding of Responsive Records and Discovery Material

95. Through written public records requests, Plaintiff sought identification of the official responsible for directing the June 17, 2021 removal of the GPA requirement.

96. The request was not fulfilled.

97. In 2024, Plaintiff served discovery requests in federal litigation seeking records identifying the decision-maker responsible for the website removal and related policy direction.

98. The responsive internal email chain was not produced.

99. Approximately three years after the original request, Plaintiff obtained the email chain reflecting that Defendant Cook personally directed changes to the website and policy concerning the GPA requirement.

100. The email reflects Cook's statement that she "want[ed] to stay involved in [the issue] because of the ongoing litigation related to it."

101. The email further reflects her bias that the law treated home education students more favorably.

102. The email chain was facially responsive to both the public records request and the federal discovery request.

103. Cook oversees UCF's Office of Public Records.

104. The failure to produce the responsive material impaired Plaintiff's ability to establish personal involvement and unconstitutional intent in prior litigation.

105. Plaintiff alleges that this withholding was not a mere recordkeeping mistake or inadvertent omission.

106. Rather, Plaintiff alleges that the withholding of responsive material after repeated requests and during active litigation formed part of a deliberate course of conduct designed to prevent authoritative adjudication of the legality of the GPA restriction, to obscure responsibility for the challenged actions, and to preserve the practical unavailability of the process mandated by Section H.

107. The evidence of this deliberate suppression or nonproduction of material records will further demonstrate arbitrary executive abuse of power and conscience-shocking conduct.

## I. POST-FILING ALTERATION OF PUBLIC NOTICE DURING PENDING LITIGATION

108. During the pendency of this litigation, and after Plaintiff filed as an exhibit the Public Notice for the September 27, 2024 Board Meeting as it appeared contemporaneously, the version of that Public Notice available on UCF's official website was materially altered.

109. The altered version includes the statement: "All meetings proceed upon adjournment of previous meetings, and at the Board Chair's privilege."

110. That language did not appear on the originally published Public Notice as filed by Plaintiff.

111. The presence of that statement is the sole basis upon which Defendants can contend that the September 27, 2024 meeting was properly noticed despite commencing prior to the listed time.

112. Defendants have not disputed the authenticity of Plaintiff's exhibit but rely upon the substance of the subsequently altered version in argument.

113. The Public Notice is central to Plaintiff's claims regarding improper notice and void Board action.

114. The alteration of the official public record during pending litigation materially affects the adjudication of Plaintiff's claims.

115. The original September 27, 2024 public notice, any later altered version, and any records reflecting the timing, authorship, migration, revision history, or rationale for the alteration are material both to Plaintiff's federal access-to-courts and due-process claims and to Plaintiff's supplemental Florida Sunshine Law and Public Records Act claims.

## J. Retaliatory Removal from Public Board Meeting Press Conference

116. In March 2019, Plaintiff attended a publicly noticed meeting of the University of Central Florida Board of Trustees as a credentialed member of the press.

117. Plaintiff was investigating matters relating to the administration and funding of the Dual Enrollment Program, as well as matters relating to the Colbourn Hall construction project and his belief that the financial irregularities associated with that project extended beyond the findings of the House Ethics Report announced at that meeting. The Board meeting at which Plaintiff was present was convened in connection with the Colbourn Hall matter, and all other

credentialed press present were covering that subject. Plaintiff was the only member of the press also investigating what he characterized as fraud connected to UCF's administration of the Dual Enrollment program..

118. Multiple members of the press were present.

119. At the beginning of the press conference after the Board meeting, Plaintiff spoke with a reporter concerning matters of public concern.

120. Moments thereafter, law enforcement officers approached Plaintiff and escorted him from the premises.

121. The officers acknowledged that Plaintiff was lawfully present, was not violating any rule, and was not disruptive.

122. On body-worn camera footage, the officers stated that the reason given to them for Plaintiff's removal was to prevent Plaintiff from serving legal filings upon the Board of Trustees in pending litigation.

123. Plaintiff informed the officers that he was not present to serve papers, but rather was present as a credentialed member of the press to investigate matters of public concern, including issues Plaintiff

described as fraud related to Colbourn Hall in connection with his pending dispute.

124. Plaintiff further informed the officers, in words to the effect, that the person who called them to remove him was the very individual Plaintiff described as the fraudster.

125. Plaintiff expressly requested permission to return to the press conference after clarifying that he was not serving papers. The officers denied Plaintiff's request and did not permit him to return.

126. Plaintiff was the only member of the press removed and was not permitted to return.

127. Defendant Cook was aware of Plaintiff's investigative activity and press status.

128. No public record has been produced identifying the official who initiated the removal request.

K. JULY 2021 PUBLIC RECORDS OFFICE INCIDENT

129. In July 2021, Plaintiff and his wife visited UCF's Office of Public Records to request records concerning the unilateral removal of the GPA requirement.

130. The Office Manager refused to comply with the lawful public records request and demanded to know Plaintiff's intended use of the records.

131. The Office Manager stated that her refusal was based on Plaintiff's identity.

132. Plaintiff requested that his wife document the refusal with her cell phone.

133. The Office Manager threatened arrest and trespass if video recording occurred.

134. Within days, Plaintiff Al Hamman, Plaintiff Ava Hamman, and Plaintiff Will Hamman received written correspondence from UCF's lawyers stating that they would be subject to arrest and trespass if they recorded any UCF official without prior consent anywhere on UCF campuses.

135. Despite Plaintiff's demands, the letter has not been withdrawn and continues to chill Plaintiff's participation in public university events.

136. As a direct and foreseeable consequence of Defendants' conduct, Plaintiff's familial relationships were substantially damaged.

137. Plaintiff was blamed within his own family for educational and litigation harms that were in fact caused by Defendants' enforcement of unlawful requirements, refusal to provide required process, and suppression or nonproduction of material records.

138. That distortion of responsibility foreseeably impaired Plaintiff's relationship with his wife, damaged Plaintiff's standing with his parents during the final years of their lives, and interfered with Plaintiff's relationship with his son.

139. Plaintiff suffered humiliation, grief, mental anguish, loss of family affection, loss of household authority, and other severe emotional distress as a direct and proximate result of Defendants' conduct.

140. The conduct described above was executive action undertaken after repeated notice of the governing law, the mandatory adjudicative mechanism, the availability of less restrictive and lawful alternatives, and the predictable human consequences of refusing that process.

141. Plaintiff alleges that, taken together, the continuing enforcement of an unpromulgated regulation, the refusal to initiate mandatory quasi-judicial proceedings, the unilateral extinguishment of a live challenge, the withholding or nonproduction of material records, and the retaliatory measures aimed at Plaintiff's investigative and records-seeking activity constituted arbitrary government action unjustifiable by any legitimate governmental interest.

142. Plaintiff will show that this pattern of conduct shocks the conscience.

## L. Supplemental State-Law Sunshine and Public Records Facts

143. On January 30, 2024, the University of Central Florida Board of Trustees held a meeting in Tallahassee identified on UCF's own materials as an informational meeting concerning UCF.

144. Plaintiff alleges that the January 30, 2024 meeting concerned foreseeable Board business and was therefore subject to Florida's Sunshine Law.

145. No minutes for that meeting were promptly recorded and made available for public inspection on the Board's website.

146. Plaintiff further alleges that UCF's position, previously asserted by it, was that minutes were not required because the meeting was only informational and no vote was taken.

147. On September 27, 2024, the Board's public notice represented that the general Board meeting would occur at 4:00 p.m.

148. The minutes for that same meeting reflect that the meeting was actually called to order at 2:15 p.m.

149. Those minutes further reflect that the Board approved the 2024-2025 University Operating Budget and related budget items at that meeting.

150. Plaintiff alleges that the September 27, 2024 meeting was not reasonably noticed as required by Florida's Sunshine Law.

151. During the pendency of this litigation, and after Plaintiff had preserved the originally published version of the September 27, 2024 public

notice, the version displayed on UCF's official website was altered to add the statement that all meetings proceed upon adjournment of previous meetings and at the Board Chair's privilege.

152. Plaintiff alleges that the original public notice did not contain that statement in the notice itself, that the Board of Trustees website was the entirety of UCF's publication and archive scheme for those notices, and that the altered archived version now materially changes the appearance of the legality of the notice previously given.

153. Plaintiff further alleges that the original notice, the altered notice, any superseded versions, version-history records, migration logs, audit logs, metadata, communications concerning the alteration, and records sufficient to identify who made the change, when the change was made, and why it was made are public records made or received in connection with official university business and subject to preservation and inspection.

## M. Section H Regulation Challenges and Deprivations

154. Florida Statutes section 1001.706(2) governs the regulatory authority of the Board of Governors and authorizes the

adoption of a regulation development procedure applicable to state university boards of trustees.

155. Pursuant to section 1001.706(2), the Florida Board of Governors adopted a Regulation Development Procedure ("RDP") applicable to state university boards of trustees.

156. Section H of the RDP establishes a mandatory adjudicatory process by which a substantially affected person may seek a determination that a university regulation is an invalid exercise of authority.

157. Section H provides that such a petition shall be filed with the university board of trustees or its designee and, if the petition is of sufficient specificity and states sufficient grounds, the university board of trustees shall assign a hearing officer within fifteen (15) days.

158. Section H further provides that the hearing officer shall conduct a de novo hearing within prescribed time limits, issue a recommended order, and that the university board of trustees shall issue a final decision.

159. Section J of the RDP provides that final decisions of the university board of trustees may be challenged in court only after exhausting the available administrative remedies under the RDP.

160. Plaintiff is, and at all relevant times was, a substantially affected person within the meaning of the RDP.

161. On approximately two dozen occasions, Plaintiff filed civil actions and petitions, including petitions for writ of mandamus, challenging UCF regulations as invalid exercises of authority.

162. As a matter of course in each such civil action, Plaintiff also filed the regulation challenge petition with the University of Central Florida Board of Trustees.

163. Each such filing satisfied the criteria specified in Section H of the RDP and constituted a regulation challenge petition under that Section.

164. Despite receipt of Plaintiff's regulation challenge petitions, Defendants failed to assign a hearing officer within fifteen (15) days.

165. No *de novo* hearing was convened under Section H of the RDP.

166. No recommended order was issued.

167. No final administrative decision was issued under the RDP in response to Plaintiff's regulation challenge petitions.

168. By failing to initiate and conduct the mandatory adjudicatory process required by Section H of the RDP in response to each civil action which was served upon the BOT that did in fact also meet substantive criteria for a regulation challenge, Defendants deprived Plaintiff of the quasi-judicial administrative forum mandated by Florida law for regulation challenges.

COUNT I

Procedural Due Process – Adjudicative Deprivation

169. Plaintiff Al Hamman realleges and incorporates by reference paragraphs 32 through 81, 95 through 107, and 154 through 168, but does not incorporate prior counts except as expressly stated.

170. The withheld email chain further reflects Defendant Cook's direct knowledge of the governing statutory language and her active role in controlling policy implementation during the period at issue.

171. The First and Fourteenth Amendments guarantee meaningful access to courts for the purpose of pursuing non-frivolous legal claims. See *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Government action that forecloses a litigant's ability to obtain meaningful review may violate this right.

172. Property interests protected by the Due Process Clause arise from state law when an individual has a legitimate claim of entitlement rather than a unilateral expectation. See *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Once created, such interests may not be withdrawn without due process of law. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

173. The Fourteenth Amendment prohibits the State from depriving a person of a state-created entitlement without constitutionally adequate process. See *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430–33 (1982); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). When state law uses mandatory language limiting official discretion, it may create a protected entitlement. See *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

174. Section H created a mandatory adjudicative entitlement. Section 1001.706(2)(c) requires that the RDP include a challenge process. Section H.2(b) provides that the university board of trustees "shall assign a hearing officer" within 15 days of receipt of a qualifying petition. This language creates a clear legal duty that is ministerial in nature and leaves no room for discretionary refusal once the statutory criteria are satisfied.

175. Plaintiff invoked that entitlement.

176. Defendants refused to provide the required hearing.

177. Defendants extinguished any chance of an uncorrupted adjudicative process through the unilateral & unpromulgated removal of the challenged GPA requirement from the UCF website.

178. Plaintiff was deprived of procedural due process.

COUNT II

Procedural Due Process – Property Deprivation

179. Plaintiffs Al Hamman and Will Hamman reallege and incorporate by reference paragraphs 32 through 81 and 154 through 168, but do not incorporate prior counts except as expressly stated.

180. Plaintiff Will Hamman possessed a legitimate claim of entitlement to participation in Dual Enrollment.

181. As a Home Education Dual Enrollment "Student's Parent," Plaintiff Al Hamman possessed rights under section 1007.271, Florida Statutes, including the right to participate in the articulation-agreement framework governing home education dual enrollment and the corresponding entitlement to the educational benefits and free instructional materials guaranteed by Florida law.

182. Parents possess a protected liberty interest in directing the upbringing, education, and care of their children. See *Meyer v. Nebraska*, 262 U.S. 390, 399-401 (1923); *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). Florida law likewise recognizes as fundamental the right of parents to direct the upbringing, education, and care of their minor children. § 1014.02(1), Fla. Stat.

183. Defendants deprived Plaintiff Will Hamman and Plaintiff Al Hamman of those protected interests by enforcing a series of unpromulgated regulations, denying access to Dual Enrollment, refusing to provide the

adjudicative process required to challenge that requirement, and thereby overriding lawful parental educational decision-making through unauthorized state action.

184. These deprivations occurred without constitutionally adequate process.

185. As a result, Plaintiff Will Hamman suffered economic injury and other compensable damages associated with deprivation of constitutionally protected interests, including emotional distress, impairment of parental authority, and injury to family relationships proximately caused by the deprivation.

186. Plaintiff Al Hamman also suffered economic injury and other compensable damages associated with deprivation of constitutionally protected interests, including emotional distress, impairment of parental authority, and injury to family relationships proximately caused by the deprivation.

COUNT III

Denial of Access to Courts – 42 U.S.C. § 1983

187. Plaintiff Al Hamman realleges and incorporates by reference paragraphs 32 through 128, and paragraphs 154–168, but does not incorporate prior counts except as expressly stated.

188. The First and Fourteenth Amendments guarantee meaningful access to courts for the purpose of pursuing non-frivolous legal claims.

189. Plaintiff pursued non-frivolous claims challenging the legality of UCF's GPA requirement.

190. Defendants knowingly refused to process filings satisfying the criteria for a Regulation Challenge under Section H.2 of the RDP.

191. By refusing to initiate mandatory adjudicative procedures, Defendants prevented the creation of an administrative record necessary for exhaustion and judicial review.

192. Because Section J of the RDP conditions judicial review upon exhaustion of administrative remedies, Defendants' refusal to initiate the statutorily mandated adjudicative process rendered exhaustion impossible and foreclosed the procedural path to certiorari review contemplated by the RDP and §1001.706(2)(c).

193. Defendants' conduct resulted in procedural barriers and impairment of Plaintiff's ability to obtain full judicial consideration of his claims.

194. In addition, the post-filing alteration of the September 27, 2024 Public Notice, followed by Defendants' reliance on the altered substance as the exclusive basis for their defense of proper notice, further impaired Plaintiff's ability to obtain adjudication based upon the true historical record. The Due Process Clause guarantees a fundamentally fair judicial proceeding; that guarantee is undermined when a governmental defendant materially alters an official public record central to pending litigation and then relies upon the altered version without reconciling the discrepancy.

195. The intentional withholding of responsive material evidence identifying the responsible decision-maker and evidencing deliberate control of policy in response to pending litigation further impaired Plaintiff's ability to obtain meaningful judicial review of his claims. The suppression of this evidence prevented full and fair adjudication of the underlying non-frivolous constitutional claims and materially affected Plaintiff's ability to prove personal involvement and unconstitutional intent.

196. Plaintiff further alleges that Defendants' effort to control the forum in which this dispute would proceed, when combined with their refusal to initiate the mandatory Section H process and their suppression or nonproduction of material records, compounded the denial of meaningful access to courts.

197. Defendants sought to place Plaintiff in a forum position in which procedural barriers, including prior sanctions, could be used to defeat or materially impair merits review before the legality of the challenged conduct was ever adjudicated.

198. If proven, this coordinated use of administrative nonfeasance, record suppression, and forum manipulation further demonstrates deliberate interference with Plaintiff's ability to obtain full and fair judicial consideration of non-frivolous claims.

199. As a direct and proximate result, Plaintiff suffered injury including loss of opportunity for meaningful adjudication of non-frivolous claims.

COUNT IV

Procedural Due Process – Destruction of Statutorily Mandated Adjudicatory Entitlement

(42 U.S.C. § 1983)

200. Plaintiff Al Hamman realleges and incorporates by reference paragraphs 32 through 107, and 154 through 168, but does not incorporate prior counts except as expressly stated.

201. The arbitrary destruction of a state-created adjudicatory entitlement violates procedural due process. See *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982). Where a statutory scheme creates a mandatory adjudicative mechanism, the State may not extinguish that entitlement through administrative refusal.

202. *Florida Statutes* § 1001.706(2)(c) mandates that any regulation development procedure adopted by the Board of Governors must provide a process by which a substantially affected person may challenge unlawful or unpromulgated regulations.

203. Pursuant to that mandate, the Board of Governors adopted the Regulation Development Procedure ("RDP"), including Section H, which provides that upon receipt of a petition of sufficient specificity, the university board of trustees "shall assign a hearing officer" within fifteen (15) days. This language imposes a mandatory, ministerial duty

and removes discretion once the objective triggering criteria are satisfied.

204. Section H further requires that the assigned hearing officer conduct a *de novo* adjudicative hearing and issue a recommended order, after which the board of trustees must issue a final decision.

205. Section J conditions judicial review upon exhaustion of administrative remedies under the RDP.

206. By operation of § 1001.706(2)(c) and the mandatory language of Section H, the State created a structured adjudicatory mechanism triggered by defined criteria. Upon satisfaction of those criteria, substantially affected persons, including Plaintiff, possess a legitimate claim of entitlement to initiation of that adjudicatory process.

207. That entitlement arises from the statutory mandate and the mandatory procedural framework it requires, independent of whether the RDP is characterized as a Chapter 120 rule.

208. Plaintiff satisfied the triggering criteria of Section H on approximately two dozen occasions.

209. Despite receipt of qualifying petitions, Defendants failed and refused to assign a hearing officer, failed to convene the required *de novo* proceedings, and failed to issue a recommended order or final decision.

210. This Count is distinct from Count I. Count I addresses the June 17 Petition, which was *acknowledged* as quasi-judicial and then extinguished midstream through unilateral removal of the challenged requirement. By contrast, this Count addresses Defendants' repeated and systemic refusal to initiate Section H adjudicatory proceedings upon receipt of qualifying regulation challenge petitions. The deprivation alleged herein arises not from termination of a proceeding once begun, but from structural non-initiation of mandatory adjudication across multiple qualifying filings.

211. By refusing to initiate the adjudicatory process required by statute and Section H, Defendants extinguished Plaintiff's state-created adjudicatory entitlement.

212. The deprivation was structural, repeated, and effectuated under color of state law.

213. Because Section J requires exhaustion of administrative remedies prior to judicial review, Defendants' refusal to initiate Section

H proceedings rendered exhaustion impossible and foreclosed the exclusive administrative pathway allowed by statute.

214. No adequate state post-deprivation remedy existed to cure this deprivation, as the State's own mandatory adjudicatory mechanism was never activated and judicial review was conditioned upon it's exhaustion.

215. The destruction of a statutorily mandated adjudicatory entitlement through administrative refusal constitutes a deprivation of procedural due process under the Fourteenth Amendment.

216. Defendant Cook, in her individual capacity, knowingly participated in or acquiesced in this deprivation by failing to ensure compliance with the mandatory Section H procedures.

217. As a direct and proximate result, Plaintiff was deprived of the quasi-judicial administrative forum guaranteed by statute and of the opportunity to obtain a recommended order and final decision subject to appellate review.

218. Each qualifying regulation-challenge filing alleged herein independently triggered the nondiscretionary duty to assign a hearing officer within fifteen (15) days.

219. Accordingly, the repeated non-initiation of Section H proceedings was not merely the continuing effect of a single earlier decision, but a series of separately completed constitutional deprivations, each inflicting fresh procedural injury and each further foreclosing exhaustion and meaningful judicial review.

220. Plaintiff pleads in the alternative that these repeated refusals constitute both an ongoing course of unconstitutional conduct and, to the extent relevant to damages, accrual, aggregation, or sovereign-immunity-cap analysis, distinct incidents or occurrences arising from separate petition-triggered duties.

COUNT V

First Amendment – Retaliatory Removal and Viewpoint Discrimination

(42 U.S.C. § 1983)

221. Plaintiff Al Hamman realleges and incorporates by reference paragraphs 32–47, 95-107, and 116–128, but does not incorporate prior counts except as expressly stated.

222. The First Amendment protects the right to gather information and to record public officials performing their duties in public. See *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). Prior restraints and blanket prohibitions on protected speech are subject to strict scrutiny and are presumptively unconstitutional. See *Near v. Minnesota*, 283 U.S. 697, 713 (1931).

223. The First Amendment prohibits government officials from retaliating against an individual for engaging in protected speech. See *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). Selective exclusion from a public or limited public forum based on viewpoint is presumptively unconstitutional. See *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995).

224. The First Amendment protects the right of members of the press to gather news and to engage in investigative activity in public fora without retaliation or viewpoint-based exclusion.

225. The March 2019 Board of Trustees meeting and associated press conference constituted at minimum a limited public forum open to members of the press.

226. Plaintiff engaged in protected First Amendment activity by attending the meeting as a credentialed journalist, investigating matters of public concern, and communicated with another reporter regarding the related matter of the Colbourn Hall fraud which was the subject of the Board Meeting in question. Everyone else was there investigating Colbourn Hall, Plaintiff was investigating what he called at the time "the Dual Enrollment fraud"

227. Plaintiff was not disruptive, was not violating any rule, and was acknowledged by responding officers to be lawfully present and engaged in lawful conduct.

228. On body-worn camera footage, the officers stated that the reason given for Plaintiff's removal was to prevent service of legal filings on the Board of Trustees. Plaintiff immediately clarified that he was not present to serve papers and requested to return to the press conference. Plaintiff was nonetheless excluded and not permitted to return, supporting an inference that the stated justification was

pretextual and that the removal was motivated by Plaintiff's protected investigative activity and speech.

229. Plaintiff was singled out and removed from the press conference after engaging in investigative speech activity and communicating with a reporter regarding matters implicating university officials in greater wrongdoing than the House Ethics Report on the Colbourn Hall spending fraud that was announced at that meeting.

230. Defendant Cook had knowledge of Plaintiff's investigative activity into further malfeasance of the funds which were spent on Colbourn Hall and his press status at the time of the removal.

231. Removal of Plaintiff from the press conference, while other members of the press were permitted to remain, constituted adverse action sufficient to deter a person of ordinary firmness from engaging in protected speech and newsgathering activity.

232. The removal was undertaken in response to Plaintiff's protected investigative activity and speech, and therefore constituted retaliation in violation of the First Amendment.

233. Alternatively, the selective removal of Plaintiff from a limited public forum while permitting other similarly situated members

of the press to remain constituted impermissible viewpoint discrimination.

234. As a direct and proximate result of Defendants' actions, Plaintiff suffered injury including interference with his ability to gather and disseminate information, reputational harm, and chilling of protected speech activity.

COUNT VI

First Amendment – Retaliatory Threat, Prior Restraint, and Overbroad Recording Ban

(42 U.S.C. § 1983)

235. Plaintiffs Al Hamman, Ava Hamman, and Will Hamman reallege and incorporate by reference paragraphs 95 through 107, and paragraphs 129 through 142, but do not incorporate prior counts except as expressly stated.

236. The First Amendment protects the right to record public officials performing their duties in public and to gather information concerning matters of public concern.

237. Plaintiff Al Hamman engaged in protected activity by making a lawful public records request and by attempting to document the response of a public official performing official duties.

238. Plaintiff Al Hamman was not disruptive and was engaged in lawful conduct.

239. The Office Manager's threat of arrest and trespass for recording her constituted an adverse action sufficient to deter a person of ordinary firmness from engaging in protected First Amendment activity.

240. The subsequent written correspondence from UCF attorneys stating that Plaintiff Al Hamman, Plaintiff Ava Hamman, and Plaintiff Will Hamman would be subject to arrest and trespass if they recorded any UCF official without prior express consent anywhere on UCF campuses constitutes a credible threat of enforcement.

241. The threatened prohibition is not limited to disruptive conduct, confidential settings, or non-public areas; but instead purports to prohibit recording of public officials performing their duties across all UCF campuses.

242. The threat was issued in response to Plaintiff Al Hamman's investigative activity and public records request and was motivated, at least in part, by Plaintiff's identity and his ongoing investigation into university malfeasance.

243. The threat constitutes retaliation in violation of the First Amendment.

244. The subsequent withholding of responsive records reflecting Defendant Cook's control over policy and litigation strategy further evidences retaliatory motive and institutional suppression of Plaintiff's protected investigative activity.

245. Alternatively, the blanket prohibition on recording public officials without prior consent constitutes an unconstitutional prior restraint and is facially overbroad.

246. The continued existence of the written threat chills Plaintiff's and his family's participation in public university events and constitutes ongoing injury.

247. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered injury including chilling of protected speech, interference with newsgathering activity, and emotional distress.

COUNT VII

Declaratory and Prospective Injunctive Relief

(28 U.S.C. §§ 2201–2202; 42 U.S.C. § 1983)

248. Plaintiffs reallege and incorporate by reference paragraphs 32 through 128, and paragraphs 154 through 168, but do not incorporate prior counts except as expressly stated.

249. *Florida Statutes* § 1001.706(2)(c) requires that the regulation development procedure adopted by the Board of Governors provide a process by which substantially affected persons may challenge unlawful or unpromulgated university regulations.

250. Pursuant to that statutory mandate, the Board of Governors adopted the Regulation Development Procedure ("RDP"), including Section H, which establishes a mandatory adjudicatory process for regulation challenges.

251. Section H provides that upon receipt of a petition of sufficient specificity, the university board of trustees shall assign a hearing officer within fifteen (15) days to conduct a *de novo* adjudicatory hearing and issue a recommended order.

252. This language imposes a mandatory and ministerial duty once a qualifying petition is received.

253. Plaintiffs have repeatedly submitted filings satisfying the objective criteria of Section H for a regulation challenge petition.

254. Defendants have refused to recognize such filings as regulation challenge petitions and have refused to assign a hearing officer or initiate adjudicative proceedings.

255. As a result, the adjudicatory mechanism mandated by § 1001.706(2) and implemented through Section H of the RDP has been rendered unavailable to Plaintiff.

256. The refusal to initiate the mandatory adjudicatory process constitutes an ongoing deprivation of Plaintiff's procedural due process rights under the Fourteenth Amendment.

257. An actual controversy therefore exists concerning the rights and obligations of the parties under § 1001.706(2) and the Regulation Development Procedure.

258. Plaintiffs seek a declaration that:

a. Section H of the Regulation Development Procedure creates a mandatory adjudicatory mechanism for regulation challenges;

b. Upon receipt of a petition satisfying the objective criteria of Section H, the university board of trustees has a nondiscretionary duty to assign a hearing officer and initiate adjudicatory proceedings;

c. Defendants' refusal to initiate that process deprives substantially affected persons of a state-created adjudicatory entitlement protected by the Fourteenth Amendment.

259. Plaintiffs further seek prospective injunctive relief against the appropriate official-capacity Defendants to remedy an ongoing violation of federal law.

260. The requested injunction is not sought merely to compel compliance with state law in the abstract, but to prevent the continuing deprivation of federal procedural-due-process and access-to-courts rights that arises when Defendants refuse to initiate the mandatory

adjudicatory mechanism created by section 1001.706(2) and Section H of the RDP.

261. Prospective injunctive relief should require official-capacity Defendants, upon receipt of a filing that satisfies the objective criteria of Section H, to recognize the filing as a regulation challenge, assign a hearing officer within the time required, and refrain from defeating review by unilateral repeal, nonrecognition, suppression of material records, or other acts that render the state-created adjudicatory process unavailable in practice.

262. Such prospective relief should also operate to prevent the continued use of procedural, administrative, or forum-manipulation tactics to defeat merits review of regulation challenges that satisfy the objective criteria of Section H.

263. Plaintiffs do not seek relief forbidding lawful removal or ordinary litigation conduct as such, but seek relief sufficient to ensure that Defendants may not render the adjudicatory and judicial-review structure illusory through a combination of non-initiation, suppression of material records, unilateral extinguishment of challenges, and strategic forum control.

264. These allegations are relevant to the continuing nature of the federal violation and to the necessity of declaratory and injunctive relief.

COUNT VIII

Fourteenth Amendment – Deprivation of Property Interest in Participation in Florida's Basic Education Program

(42 U.S.C. § 1983)

265. Plaintiffs Al Hamman and Will Hamman reallege and incorporate by reference paragraphs 32 through 81 and paragraphs 154 through 168, but do not incorporate prior counts except as expressly stated.

266. Florida law provides students a state-created entitlement to participate in the State's basic education program, including access to statutory educational programs and benefits made available on mandatory terms.

267. Plaintiff Will Hamman was eligible for participation in the State's basic education program and for Dual Enrollment as part of that program.

268. Defendants, acting under color of state law, deprived Plaintiffs Will Hamman & Al Hamman of that state-created educational entitlement by enforcing an unpromulgated Dual Enrollment GPA requirement and denying him access to Dual Enrollment participation and associated statutory benefits, including free instructional materials.

269. No constitutionally adequate process preceded or accompanied this deprivation.

270. As a direct and proximate result, Plaintiffs Will Hamman & Al Hamman suffered injury and damages.

COUNT IX

Substantive Due Process – Conscience-Shocking Interference with Fundamental Parental Liberty and Family Integrity

(42 U.S.C. § 1983)

271. Plaintiff Al Hamman realleges and incorporates by reference paragraphs 32 through 142, and 154 through 168, but does not incorporate prior counts except as expressly stated.

272. Parents possess a fundamental liberty interest in directing the upbringing, education, and care of their children.

273. The Due Process Clause forbids the most egregious forms of arbitrary executive abuse of power, including conduct that is unjustifiable by any legitimate governmental interest and shocks the conscience.

274. This Count is pleaded in the alternative and is distinct from Plaintiff's procedural-due-process counts. Those counts address the denial and destruction of state-created adjudicative entitlements and other required process. This Count addresses deliberate executive abuse of power directed at Plaintiff's fundamental parental liberty and family integrity interests.

275. Defendants, with actual notice of the governing statutory and regulatory framework, enforced an unpromulgated admissions and articulation restriction against Plaintiff's son, refused to initiate the mandatory adjudicative process required to challenge that restriction, extinguished a pending challenge by unilateral removal rather than lawful adjudication, withheld or failed to produce material records bearing on responsibility and illegality, and thereby interfered with Plaintiff's lawful parental educational decision-making.

276. Defendants' conduct was not merely mistaken, negligent, or bureaucratically incomplete.

277. Plaintiff alleges that Defendants' conduct was deliberate, repeated, and arbitrary; that it was undertaken despite actual notice of the governing law and the mandatory process available; that it foreseeably undermined Plaintiff's authority within his own family by making him appear responsible for harms caused by unlawful state action; and that it was unjustifiable by any legitimate governmental interest.

278. Plaintiff further alleges that Defendants' arbitrariness was aggravated by efforts to control not only the administrative process but also the judicial forum in which the legality of their conduct would be tested.

279. Specifically, Plaintiff alleges that Defendants removed this action to federal court in order to enforce a prior sanctions regime counting on reassignment to the judge associated with the Martin-Trigona Sanctions which was entered in the prior case.

280. If proven, such conduct would support the inference that Defendants were not merely mistaken about procedure, but were

instead deliberately using governmental power to block, divert, or manipulate the avenues through which Plaintiff could challenge unlawful interference with parental liberty, educational rights, and access to courts.

281. This conduct shocks the conscience.

282. As a direct and proximate result, Plaintiff suffered deprivation of fundamental parental liberty, impairment of family integrity, humiliation, mental anguish, damage to marital and parental relationships, loss of family affection, and other compensable injuries.

COUNT X

Supplemental State-Law Claim

Violation of Florida Sunshine Law - January 30, 2024 Board Meeting

Fla. Stat. § 286.011

283. Plaintiffs reallege and incorporate by reference paragraphs 143 through 146, but do not incorporate prior counts except as expressly stated.

284. Florida's Sunshine Law requires covered board meetings to be open to the public and requires that minutes of such meetings be promptly recorded and open to public inspection.

285. On January 30, 2024, the University of Central Florida Board of Trustees held a meeting in Tallahassee concerning UCF business.

286. That meeting concerned foreseeable Board business and was therefore subject to Florida's Sunshine Law.

287. No minutes of that meeting were promptly recorded and made available for public inspection.

288. Plaintiffs seek a declaration that the January 30, 2024 meeting violated Florida Statutes section 286.011 and seek injunctive relief sufficient to enforce that section, including preservation and production of any existing notes, attendee lists, calendars, communications, draft minutes, recordings, or other records sufficient to identify the participants and the subject matter discussed.

COUNT XI

Supplemental State-Law Claim

Violation of Florida Sunshine Law - September 27, 2024 Board Meeting

Fla. Stat. § 286.011

289. Plaintiffs reallege and incorporate by reference paragraphs 108 through 115 and 147 through 150, but do not incorporate prior counts except as expressly stated.

290. The public notice for the September 27, 2024 Board meeting stated that the meeting would occur at 4:00 p.m.

291. The Board's own minutes reflect that the meeting was actually called to order at 2:15 p.m.

292. Those same minutes reflect that the Board approved the 2024-2025 University Operating Budget and related budget items at that meeting.

293. Plaintiffs allege that the September 27, 2024 Board meeting was not reasonably noticed as required by Florida's Sunshine Law.

294. Plaintiffs seek a declaration that the September 27, 2024 meeting violated Florida Statutes section 286.011 and that actions taken there are void to the extent required by Florida law.

COUNT XII

Supplemental State-Law Claim

Violation of Florida Public Records Act - Original Notice, Superseded Notice, and Version-History Records

*Fla. Stat. §§* 119.07 and 119.11

295. Plaintiffs reallege and incorporate by reference paragraphs 108 through 115 and 151 through 153, but do not incorporate prior counts except as expressly stated.

296. By replacing the originally published September 27, 2024 public notice with an altered archived version, while the original version and version-history materials remain unavailable for inspection, Defendants have denied or impaired access to the authentic public record of notice.

297. Plaintiffs seek declaratory and injunctive relief requiring preservation and inspection of the original notice, all superseded versions, and all records sufficient to show when, how, why, and by whom the notice was altered.

298. Plaintiffs further invoke the accelerated-hearing and anti-alteration protections applicable to actions brought to enforce Chapter 119.

## V. REQUEST FOR RELIEF

299. Plaintiffs respectfully request:

A. Declaratory judgment;

B. Injunctive relief;

C. Compensatory damages, and against individual-capacity defendants punitive damages where permitted, including but not limited to economic loss, emotional distress, humiliation, mental anguish, loss of family affection, impairment of parental authority, damages associated with deprivation of protected property and liberty interests, and impairment of access to courts, as supported by evidence developed in discovery;

Such compensatory and punitive relief is sought, where permitted by law, for Count IX as well, including for

conscience-shocking interference with Plaintiff's parental liberty, family integrity, and household authority.

D. Nominal damages;

E. Attorneys' fees under 42 U.S.C. § 1988 (covering future fees by a licensed attorney in this matter,);

F. Filing fees for this case;

G. Any other relief deemed proper;

H. A declaration that the January 30, 2024 Board of Trustees meeting violated Florida Statutes section 286.011;

I. A declaration that the September 27, 2024 Board of Trustees meeting was not lawfully noticed and that actions taken there are void to the extent required by Florida law;

J. Injunctive relief requiring preservation and production of the originally published September 27, 2024 public notice, any superseded versions, any version-history, migration, metadata, or audit-trail records, and any records sufficient to identify who altered the archived public notice, when, and why;

K. Such fees, costs, and hearing relief as are authorized by Florida law for the Sunshine Law and Public Records Act claims.

300. Plaintiffs plead in the alternative that, to the extent any damages remedy against a governmental entity is found available by waiver or otherwise, each semester-specific denial of Dual Enrollment participation and each separate qualifying regulation-challenge filing followed by a failure to assign a hearing officer constituted a distinct incident or occurrence, a separately accruing violation, and an independently compensable injury.

Respectfully Submitted this 6th day of April, 2026,

Al Hamman
al@hamman.net
1316 Hillway Road
Apopka, Florida 32703
407-421-9323

Ava Hamman
al@hamman.net
1316 Hillway Road
Apopka, Florida 32703
407-421-9323

Will Hamman
al@hamman.net
1316 Hillway Road
Apopka, Florida 32703
407-421-9323

CERTIFICATE OF SERVICE

I certify that on April 6, 2026, I served a true and correct copy of the foregoing Amended Complaint by email on counsel for Defendants, Pat Muldowney, at pmuldowney@bakerlaw.com.

Al Hamman
1316 Hillway Road
Apopka, Florida 32703
407-421-9323

Ava Hamman
1316 Hillway Road
Apopka, Florida 32703
407-421-9323

Will Hamman
1316 Hillway Road
Apopka, Florida 32703
407-421-9323